934 A.2d 703 (2007)
In re S.D.T., JR., a Minor.
Appeal of S.D.T., Sr.
Superior Court of Pennsylvania.
Submitted July 23, 2007.
Filed September 6, 2007.
Reargument Denied November 19, 2007.
*704 Joy M. Waters, Oberlin, for appellant.
Kevin R. Helm, Halifax, for Guardian Ad Litem, appellee.
Jason Kutulakis, Carlisle, for Children and Youth, appellee.
BEFORE: KLEIN, DANIELS and KELLY, JJ.
OPINION BY DANIELS, J.:
¶ 1 Natural father, S.D.T., Sr. (Appellant), appeals from the decree entered on January 10, 2007 by the Orphans' Court of Dauphin County, terminating Appellant's parental rights to his minor child, S.D.T., Jr. We vacate and remand for the purpose of further development of the record below for the following reasons.
¶ 2 The lower court summarized the facts and procedural history of this matter as follows:
The circumstances which brought [S.D.T., Jr.] to the [Dauphin County Social Services for Children and Youth] *705 Agency's attention were an allegation that [S.D.T., Jr.'s] younger brother had been physically abused by the mother. The Agency was concerned about [S.D.T., Jr.'s] safety because the mother would not disclose his location, other than that he was living with the father. Following a detention hearing on August 16, 2004, [S.D.T., Jr.] was placed in the temporary custody of the Juvenile Court. On the day of the Adjudication and Disposition Hearing, September 22, 2004, a relative, [L.H.], the child's godmother, contacted the Agency regarding bringing [S.D.T., Jr.] into the agency, because she knew that the Agency was looking for him. [An Agency permanency caseworker] testified that she believed that [the godmother] brought [S.D.T., Jr.] to the agency because at that time, [Appellant] left a halfway house in order to care for [S.D.T., Jr.], but wanted to avoid further legal difficulties.
At the Adjudication and Disposition hearing September 22, 2004. . . . [Appellant] was apprised of what was required of him in order to be reunited with his child.
After the child was placed, [Appellant] turned himself in and was transferred to Albion State Correctional Institute. . . .
. . .
At the end of October or beginning of November, 2006, a counselor from the Dauphin County Prison informed the agency that [Appellant] was incarcerated for non-payment of child support. On November 9, 2006, the Dauphin County Court sentenced [Appellant] to six months of incarceration in the Dauphin County Prison and Work Release Center. At the time of the hearing before court in December 28, 2006, he remained incarcerated and was hopeful that he could be out of March 2006[sic].
The record of the above sequence of events reflects that throughout 2004 up to and through the time of the hearing . . . [Appellant] was either incarcerated, in a halfway house or in an inpatient drug rehabilitation facility, with the exception of brief periods.
. . .
On July 25, 2006, the Juvenile Court changed the permanency goal to adoption. No appeal was taken from that Order.
. . .
Additionally, the Agency presented testimony on the condition of the child. [The Agency caseworker] testified that physically and developmentally, the child is doing well. However, [S.D.T., Jr.] experiences serious difficulties from an emotional standpoint. In September 2006, the child wrote a letter in which he talked about killing himself because of the current situation. The Agency obtained an emergency psychiatric evaluation and counseling which resulted in hospitalization. The Agency learned that [S.D.T., Jr.] experienced emotional problems after reading letters from [Appellant] in which [Appellant] made promises to reunify, which ended in disappointment.

Lower Court 1925(a) Opinion, 4/18/07, pp. 1-5 (Internal Citations Omitted and Emphasis Added).
¶ 3 In cases involving termination of parental rights, our scope of review is broad. All of the evidence, as well as the trial court's factual and legal determinations, are to be considered. In re M.G., 855 A.2d 68 (Pa.Super.2004). However, our standard of review is limited to determining whether the order of the trial court is supported by competent evidence, and whether the trial court gave adequate consideration to the effect of such a decree on the welfare of the child. In re Adoption *706 of S.M., 816 A.2d 1117 (Pa.Super.2003). We have always been deferential to the trial court as the fact finder, as the determiner of the credibility of witnesses, and as the sole and final arbiter of all conflicts in the evidence. See In re Adoption of A.C.H., 803 A.2d 224 (Pa.Super.2002). Moreover, this Court will affirm a termination of parental rights if competent evidence supports the trial court's findings, even if the record could support an opposite result. See In the Interest of L.S.G., 767 A.2d 587 (Pa.Super.2001).
¶ 4 In order to prevail in a petition for termination of parental rights, the petitioner must present clear and convincing evidence to the trial court of at least one of the statutory grounds for termination. See In re J.D.W.M., 810 A.2d 688 (Pa.Super.2002). This means that the evidence must be sufficiently clear, direct, weighty, and convincing so as to enable the trier of fact to come to a clear conviction, without hesitation as to truth of the facts supporting one or more of the statutory grounds necessary to support such termination of parental rights. In re Julissa O., 746 A.2d 1137 (Pa.Super.2000).
¶ 5 Pennsylvania courts are required to engage in a two-step evaluation process before terminating parental rights. In re R.J.S., 901 A.2d 502 (Pa.Super.2006). First, the conduct of the parent must be examined. The petitioner seeking termination must establish by clear and convincing evidence that the parent's conduct satisfies at least one of the nine statutory grounds for termination, as set forth in 23 Pa.C.S.A. § 2511(a). Id. If it is determined that this burden of proof has been met, then the trial court must next consider the second step of the process, which entails a determination of whether termination best serves the needs and welfare of the child. The needs and welfare of the child are the paramount consideration in deciding whether to terminate parental rights. In re N.W., 859 A.2d 501 (Pa.Super.2004). The effect of severing the bond between the parent and the child is "a major aspect of the needs and welfare analysis." In re R.J.S. supra at 901 A.2d 508. Consistent with the Supreme Court of Pennsylvania's admonitions in In re E.M, 533 Pa. 115, 620 A.2d 481 (1993), this Court has in the past "reversed and remanded termination cases in which the child welfare agency failed to present sufficient evidence concerning the presence or absence of a parent-child bond and the likely effect of its permanent cleavage on the child." In re R.J.S. supra at 901 A.2d 508.
¶ 6 We have thoroughly reviewed the record below, including the reasoning of the lower court in reaching its determination to terminate Appellant's parental rights. Although we agree with the lower court that Appellant's conduct satisfies two of the statutory grounds of § 2511(a), we do not, given the present state of the lower court record, necessarily agree with that court's conclusion that the child welfare agency has proven by clear and convincing evidence that the termination of Appellant's parental rights serves the needs and welfare of the child.
¶ 7 The lower court's conclusion that Appellant's conduct has established, by clear and convincing evidence, that parental termination is justified under §§ 2511(a)(5) and (8) is supported by competent and convincing evidence in the record.[1] S.D.T., Jr. was removed from the *707 care of Appellant by the court on or before September 22, 2004, more than twenty-two months prior to the date of the filing of the Petition to Involuntarily Terminate Parental Rights on July 27, 2006 (see Lower Court 1925(a) Opinion, p. 2). The conditions that led to that removal  namely, Appellant's repeated rounds of incarceration and substance abuse treatment that have prevented Appellant from being available to provide and care for his son  continued to exist as of the date on which the Termination Petition was filed with the lower court (Lower Court 1925(a) Opinion, p. 5). Moreover, based upon Appellant's past history, it was quite reasonable for the lower court to conclude (as it did) that, notwithstanding Appellant's testimony as to his good intentions, Appellant is unlikely to remedy those conditions within a reasonable period of time. Lower Court 1925(a) Opinion, p. 9. See In re Adoption of A.C.H, 803 A.2d 224 (Pa.Super.2002), and In re K.C.W., 456 Pa.Super. 1, 689 A.2d 294 (1997). Accordingly, we shall not disturb the findings and conclusions of the court below as to the Agency's satisfaction of the parental conduct prong of the termination analysis under § 2511(a)(5) and (8).
¶ 8 As to the lower court's analysis of the second prong; i.e., whether the termination of parental rights best serves the needs and welfare of the child[2], we cannot agree with the lower court's conclusion in that regard at this point in time, because we find that the record below is deficient as to the specific reasons for S.D.T., Jr.'s suicidal writing. The court below merely relates the chronology presented by the caseworker  that there was a psychiatrically-indicated hospital stay, followed by the Agency's alleged newfound awareness of the reason that S.D.T., Jr. considered suicide  without any evidentiary link between the two events. (Lower Court 1925(a) Opinion, p. 5). This is not a matter of the credibility of the petitioning agency's sole witness, which we do not impugn in the slightest. Rather, it is that the record below is totally devoid of any testimony as to how the petitioning agency "learned" that it was S.D.T., Jr.'s disappointment with the Appellant's unfulfilled promises, rather than, for example, the prospect of being permanently separated from his father, that triggered S.D.T., Jr.'s suicidal thoughts and writing. See Lower Court 1925(a) Opinion, p. 5.
*708 ¶ 9 At the hearing on December 28, 2006, the petitioning Agency's caseworker testified that an "attachment and bond" does, in fact, exist between Appellant and S.D.T., Jr. (N.T., 12/28/06, p. 32). The conclusion of the court below that severing this bond between Appellant and S.D.T., Jr. would serve the needs and welfare of the child is based solely on the testimony of that caseworker. Lower Court 1925(a) Opinion, p. 5. The caseworker, in turn, came to this conclusion because the child wrote a suicide letter after reading his father's many letters written during incarceration and treatment. Lower Court 1925(a) Opinion, p. 5. (N.T., 12/18/06, pp. 21-23.) S.D.T., Jr.'s suicidal ideation was thought to be so serious to trigger "an emergency psychiatric evaluation" that, in turn, led to a hospital stay. Lower Court 1925(a) Opinion, p. 5. And yet, there was no testimony as to the specific reason or reasons for S.D.T., Jr.'s contemplating suicide; nor was the child's writing itself admitted into evidence at the hearing below. The report documenting the results of the psychiatric evaluation of S.D.T., Jr. was not received into evidence at the December 28, 2006 hearing, nor was there any testimony regarding that evaluation in the record. (N.T., 12/18/06, pp. 21-22, 38). Moreover, there was no testimony from those in charge of S.D.T., Jr.'s care during his hospital stay, and there is nothing in the record concerning what happened during that stay. The lower court record is totally devoid of the hospital records themselves, or what they disclosed about the child's mental status and why. There was no testimony regarding the results of S.D.T., Jr.'s counseling sessions, nor is there any information in the record concerning that counseling, beyond the fact that it occurred. Finally, the child welfare agency itself performed no independent assessment of what effect the termination of parental rights would have upon S.D.T., Jr. (N.T., 12/18/06, p. 38). We are simply told that these events of a diagnostic nature occurred, and we do accept the fact that they did occur. However, we cannot discern from the present record how these events led to the conclusion that S.D.T., Jr.'s thoughts of suicide were based solely on his disappointment with the Appellant's unfulfilled promises. We do not say today that they were not so based; we say only that a more detailed and specific development of the record below is needed in order for any court to determine their basis or genesis. For, as we have stated in In re R.J.S. supra:
. . . The court must consider the needs and welfare of the children, including the presence of any parent-child emotional bond, which encompasses intangibles such as love, comfort, security, and stability. [In re] C.M.S., supra, 884 A.2d [1284] at 1287 [Pa.Super.2005]. When an emotional bond is present between parent and child, the court must consider the effect of its permanent severance on the child. Id.; In re R.L.T.M., 860 A.2d 190, 195 (Pa.Super.2004). Our Supreme Court has spoken in no uncertain terms about the importance of this consideration in a termination case: "To render a decision that termination serves the needs and welfare of the child without consideration of emotional bonds, in a case such as this where a bond, to some extent at least, obviously exists . . . is not proper." In re E.M., 533 Pa. 115, 123, 620 A.2d 481, 485 (1993) (quoted in In re C.W.S.M., 839 A.2d 398, 403 (Pa.Super.2003)).
Id. at 514.
¶ 10 Given the severity of S.D.T., Jr.'s reaction to reading his father's letters, we must exercise extreme caution. Without more specific information as to why S.D.T., Jr. wrote of suicide after reading his father's *709 letters, neither this Court nor the court below can opine as to the reason for the child's despondency and expressed suicidal intention. Perhaps it was caused by the child's fear and realization that his bond with his father was about to be legally and permanently severed. This Court cannot postulate, at this time, as to the effects of termination of Appellant's parental rights to S.D.T., Jr., upon the child, based upon the state of the record as it was developed below. If, for example, that reason was the prospect of permanent separation from his father, rather than disappointment with his father's unfulfilled promises, the results of such termination could be tragic. At this juncture in the proceedings, we simply do not know the effect upon S.D.T., Jr. of the termination of Appellant's parental rights. Accordingly, we are compelled to conclude that such issue was not fully explored below, and that the determination of the court below as to this critical element was not based upon clear, convincing and competent evidence of record. In re E.M., 533 Pa. 115, 620 A.2d 481 (1993); see also In re Adoption of A.C.H., 803 A.2d 224 (Pa.Super.2002). Accordingly, we remand with instructions to the lower court to conduct an evidentiary hearing and develop a record addressing the deficiencies enumerated hereinbefore and to file a supplemental opinion within 60 days.
¶ 11 The decree of January 10, 2007 terminating Appellant's parental rights is vacated, and this matter is remanded for further proceedings consistent with this Opinion. Jurisdiction retained.
NOTES
[1] (a) General rule.  The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

. . .
(5) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child.
. . .
(8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.
[2] (b) Other considerations.  The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition. 23 Pa.C.S.A. § 2511(b).