J-S57029-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN THE INTEREST OF: C.E.C., A MINOR, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| APPEAL OF: C.C., FATHER | |
| | No. 256 WDA 2016 |

Appeal from the Order January 20, 2016
In the Court of Common Pleas of Allegheny County
Family Court at No(s): CP-02-AP-0000122-2015

BEFORE:  FORD ELLIOTT, P.J.E., SHOGAN and STRASSBURGER,[*] JJ.

MEMORANDUM BY SHOGAN, J.:                    **FILED AUGUST 25, 2016**

C.C. ("Father") appeals from the order dated January 19, 2016, and entered on January 21, 2016,[1] granting the petition filed by the Allegheny County Office of Children, Youth and Families ("CYF") for the involuntary termination of his parental rights to C.E.C. ("Child"), born in July of 2014, pursuant to 23 Pa.C.S. § 2511(a)(2), (5), and (b).

In his timely appeal, Father raises two issues: 1) whether the trial court erred in finding CYF provided reasonable services to reunify him with Child, and 2) whether the trial court erred in finding that terminating the

_____

[*]  Retired Senior Judge assigned to the Superior Court.

[1] The thirty-day appeal period is not triggered until the clerk makes a notation on the docket that notice of entry of the order has been given. **In re L.M.**, 923 A.2d 505, 508 (Pa. Super. 2007) (citing **Frazier v. City of Philadelphia**, 557 Pa. 618, 621, 735 A.2d 113, 115 (1999)).

parental rights of Father best meets the needs and welfare of Child?

Father's Brief at 1. After careful review, we affirm.

> The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re Adoption of C.J.P.*, 114 A.3d 1046, 1049 (Pa. Super. 2015) (quoting

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks

omitted)).

Our review of the record reveals that Father waived his first issue by failing to preserve it in his concise statement of errors complained of on appeal. *See In re Adoption of C.J.P.*, 114 A.3d 1046, 1053 n.7 (Pa. Super. 2015) (holding that appellant waives issues not raised in his concise statement of errors complained of on appeal) (citation omitted).[2]

_____

[2] Even if Father had preserved the issue, we would conclude that it lacks merit. *See In the Interest of: D.C.D.*, 105 A.3d 662, 673-674, 676 (Pa. 2014) ("[W]hile reasonable efforts should be considered and indeed, in the appropriate case, a trial court could insist upon their provision, we hold that nothing in the language or the purpose of Section 6351(f)(9) [of the Juvenile Act, 42 Pa.C.S. or Section 2511(a) of the Adoption Act, 23 Pa.C.S.], forbids

*(Footnote Continued Next Page)*

In accordance with our standard of review, we find that Father's second issue lacks merit, and we affirm on the basis of the discussion in the trial court's March 24, 2016 opinion.[3] Trial Court Opinion, 3/24/16, at 4–7. Additionally, although the trial court did not expressly discuss any bond between Father and Child in its opinion, it did note that Child has been in placement "nearly the entirety of [her] young life," so it was proper to find that no bond existed between Father and Child. Trial Court Opinion, 3/24/16, at 6. *See In re K.Z.S.*, 946 A.2d 753, 764 (Pa. Super. 2008) (observing that no bond worth preserving is formed between a child and a natural parent where the child has been in foster care for most of the child's life, and the resulting bond with the natural parent is attenuated).

Order affirmed.

*(Footnote Continued)* ———————————————

the granting of a petition to terminate parental rights . . . as a consequence of the agency's failure to provide reasonable efforts to a parent.).

[3] The parties are directed to attach a copy of the trial court's March 24, 2016 opinion to this Memorandum in the event of future proceedings.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/25/2016

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA
ORPHANS' COURT DIVISION

IN THE INTEREST OF: C.E.C., minor child,

APPEAL OF: Ch.C., natural father

**CHILDREN'S FAST TRACK APPEAL**

OPINION

Docket No.:   CP-02-AP-0122-2015
TPR No.:        15-0122
256 WDA 2016

BY:
Honorable Kathryn Hens-Greco
440 Ross Street
Suite 5077
Pittsburgh, PA 15219

COPIES TO:

Counsel for Allegheny County
Children, Youth and Family Services:
Lillian Aiken, Esq.
Fort Pitt Commons, Suite 101
445 Fort Pitt Blvd
Pittsburgh, Pa 15219

Counsel for C.E.C., as Guardian ad Litem:
Amy Lynn Berecek, Esq.
Kids Voice
437 Grant Street, Suite 700
Pittsburgh, Pa 15219

Counsel for Ch.C.:
Marsha Grayson, Esq.
Grayson Law Firm, LLC
401 Wood Street
Pittsburgh, PA 15222

FILED
16 MAR 24 PH 2: 54
DEPT OF COURT RECORD
CIVIL FAMILY DIVISION
ALLEGHENY COUNTY

IN THE INTEREST OF: C.E.C., minor child    :  **CHILDREN'S FAST TRACK APPEAL**

APPEAL OF: Ch.C., natural father    :

:  Docket No.: CP-02-AP-0122-2015
:  TPR No.: 15-0122
:  256 WDA 2016
:
:
:

## OPINION

HENS-GRECO, J.                         March 24, 2016

On January 19, 2016, following a two-day hearing on the above-captioned matter in which Ch.C.

("Father") appeared with counsel, this Court issued an order granting the petition of the Allegheny County

Office of Children, Youth and Families ("CYF") for involuntary termination of the parental rights of

Father, the natural parent of daughter C.E.C. ("child")(DOB: 7/1/14), pursuant to 23 Pa.C.S.A.

§§2511(a)(2), (a)(5) and (b). For the reasons set forth below, the Order of this Court terminating Father's

parental rights should be affirmed.[1]

### A. Standard

  CYF based its petition to terminate Father's parental rights on 23 Pa.C.S.A. §§ 2511 (a)(2), (a)(5),

and (b). These subsections provide for the involuntary termination of parental rights if the petitioner can

establish any of the following grounds:

---

[1] This Court also terminated the parental rights of T.M.B. ("Mother"). Also parties to this TPR hearing were Mother's three other non-subject children: D.T.Jr., A.T., J.T., who are the half-siblings to subject child C.E.C. The Court also terminated the parental rights of the half-siblings' father, D.T., Sr.

1

(a)(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent. [...]

(a)(5) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child. [...]

23 Pa. C.S.A. §§ 2511 (a)(2), (a)(5). Once the statutory grounds for involuntary termination of parental rights have been clearly shown, the Court must consider whether the termination would meet the needs and welfare of the child under subsection §2511(b):

(b) Other considerations. – The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. [...].

23 Pa. C.S.A. § 2511 (b). A party seeking termination of parental rights must establish by clear and convincing evidence that the parent's conduct satisfies at least one of the statutory grounds for termination; if it is determined that this burden of proof has been met, then the trial court must next consider the second step of the process, which entails a determination of whether termination best serves the needs and welfare of the child. *In re S.D.T., Jr.,* 934 A.2d 703 (Pa. Super. 2007). In reviewing an order terminating parental rights, the appellate court "is limited to determining whether the decision of the trial court is supported by competent evidence. Absent an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's decision, the decree must stand." *In re S.H.,* 879 A.2d 802, 809 (Pa. Super. 2005). Furthermore, the trial court is "the sole determiner of the credibility of witnesses and resolves all conflicts in testimony." *Id.*

2

With the above standards in mind, and based on the admitted evidence and testimony of seven witnesses at trial (CYF Caseworker Kyle Kimes, psychologist Dr. Terry O'Hara, Mother, Father, Court Appointed Special Advocate Shari Dennon, parenting specialist Julianne Bendzsuk, permanency specialist Amy Rendos), the Court found the following facts, persuading the Court that CYF firmly established the grounds for termination:

### B. Factual History

Allegheny County Office of Children, Youth and Families ("CYF") has been involved with the family for years prior to the birth of the subject child. Caseworker Kyle Kimes took the case in 2011. *See* Transcript of Testimony, dated December 9, 2015 ("T1"), at 149.[2] The family came to the attention of CYF after the agency learned that Mother and the three older half-siblings were homeless. *Id.*, at 153. With housing established, the agency eventually closed the family's case in May 2013 after it installed a safety plan. *Id.*, at 157. That safety plan included the prevention of "inappropriate people" in the home, which is to say those with criminal backgrounds who could harm the children. *Id.* CYF was referring to the Father. The agency determined it could close the case since Father was incarcerated in Beaver County.

By July 2013, CYF obtained an Emergency Custody Authorization ("ECA") to remove the half-siblings after it was reported that Mother's home had little food. *Id.*, 158. Drug use was also alleged in the home. *Id.* Other individuals were residing with Mother, namely two parents whose child has been removed from their care just days earlier. *Id.*, at 159. One of the individuals was on the Sheriff's most wanted list. *Id.* Father was apparently out of jail and also living in the home. *Id.* The children's diapers were soiled. *Id.*, at 160. The case remained open after C.E.C.'s birth in July 2014. Mother struggled to keep food in the home and to properly supervise the children, one of which almost died falling out of a

---

[2] *See also generally* Transcript of Testimony, dated January 19, 2016, at 3-83.

3

second story window. *Id.*, at 169-170. Mother struggled to shield her children from abusive individuals. During one visit, Mother's shoulder was bleeding from a bite mark. *Id.*, at 171.

Father regularly beat Mother. This abuse occurred before and after the child's birth. In one instance, Father's punch made Mother's ear turn purple, affecting her hearing. *Id.*, at 185-187. In another incident, Father admitted to the caseworker that he "beat the shit out of [Mother.]" *Id.*, at 187. Mother was previously ordered to stay away from Father. *Id*, at 189. There was an active Protection From Abuse Order between the two. Father also had an extensive criminal history. The child was removed from her parents' care and was eventually adjudicated dependent after CYF confirmed Mother was still seeing Father, thereby risking her own safety as well as the safety of the newborn C.E.C. *Id.*, at 233; *see also* CYF's Exhibit 1, Adjudicatory Order of Court dated August 18, 2014. Given Father's lack of compliance with this Court's review orders, CYF's recommendations toward reunification, and his inconsistent visits, the child was never returned to Father's care. In December 2015 and January 2016, this Court held a hearing on CYF's petition to terminate Father's rights. On January 19, 2016, the Court granted CYF's petition. Father appeals.

## C. Discussion

In his wholesale appeal, Father argues that this Court erred when it terminated his rights as to 23 Pa. C.S.A. §§ 2511 (a)(2), (a)(5), and §2511(b). *See* Father's "Notice of Appeal and Statement of Errors," at paragraph 1.

In September 2014, after C.E.C.'s removal, CYF created a Family Service Plan ("FSP") to facilitate the child's reunification with Father. FSPs are comprised of goals. Father's goals were: attend parenting classes, obtain housing assistance, participate in a psychological evaluation, participate in domestic violence programs, and to visit the child twice per week. *Id.*, at 189. Father did not complete any of these goals.

4

At the TPR hearing, Father seemed to make hay out of CYF's policy to prevent visitation between child and a prospective father until paternity has been established. Father seems to argue he did not receive services for a time, which is confusing given that paternity had been established almost immediately after the child's birth. *Id.*, at 210. While it might be true that he could not immediately visit his child, Father was still entitled to services. Indeed, the casework testified that Father received agency services. *Id.*, at 207. And in any event, paternity was very quickly established. But according to the caseworker, Father was never interested in reunifying with the child. *Id.*, at 209. The caseworker testified that Father made virtually no progress by the time CYF petitioned the Court for termination. *Id.*, at 234-235.

Any number of this Court's permanency review orders demonstrates the same testimony. Father's visits were reduced from twice to once per week due to his failure to appear. *See* CYF's Exhibit 1, Order of Court, dated January 16, 2015. In August 2015, one year after the child's adjudication, this Court noted Father's noncompliance with the FSP. *See Id.*, at Order of Court, dated August 3, 2015. His visits with the child needed to be moved to a more secure location, because Father was threatening the staff. *Id.* He further displayed an inability to parent as he was demeaning and threatening to the infant, making motions to hit her. *Id.* He still continued to contact Mother, but refused to address the domestic violence issues. *Id.* He was arrested in the courthouse on an outstanding warrant issued for failing to report to probation in Beaver and Allegheny Counties. *Id. See also*, CYF's Exhibit 3.

Father's noncompliance with the Family Service Plan is demonstrative of his continued refusal to parent, leaving C.E.C. without the essential care, control or subsistence necessary for her well-being. *See* 23 Pa. C.S.A. § 2511 (a)(2). Father has made it clear to this Court that he will not remedy those issues, particularly his propensity for domestic violence, which pose the gravest threat to the child's well-being and cause her to be without parental care. At the time of the TPR, the child has been out of Father's care for

5

approximately 16 months – or, to quantify it another way, nearly the entirety of the child's young life. *See* 23 Pa. C.S.A. § 2511 (a)(5).

Having determined as sound the grounds for termination, this Court addresses the final step in its analysis. That is, whether termination would meet the child's needs and welfare under 23 Pa. C.S.A. § 2511 (b). The Court finds developmental, physical and emotional needs and welfare of the child would be best served by terminating Father's parental rights. Dr. O'Hara similarly testified that he saw no evidence that Father could appropriately meet the needs and welfare of the child. *See* T1, at 44. Dr. O'Hara cited Father's continued risk for violence, his extensive criminal history and impulsivity, among other factors. *Id.*, at 20, 44. Father also indicated he abused cannabis, alcohol, and it was reported at Father had ingested unidentified – presumably illicit – pills during a visit with the child. *Id.*, at 21; 74. Dr. O'Hara testified that in addition to the factors suggesting future violence, Father did not display those factors which might mitigate this potential risk. That is, Father lacked coping skills or a support network. *Id.*, at 24. He vehemently refused therapy; Dr. O'Hara recommended a once-weekly session with a clinician who has extensive experience with violence and aggression issues. *Id.*, at 24-25; 48. While Father did demonstrate some positive parenting traits, Dr. O'Hara ultimately concluded that Father would not be able to appropriately manage frustration and anger, nor would he be able to hold things together were he in a situation where the child was in Father's care. *Id.*, at 26. Father lacked an understanding of the child's developmental level; he indicated that the child could walk at five months old. *Id.*, at 27. He told the baby to slow down when she was drinking her formula, unaware that a child of that age could understand a command or change her behavior. *Id.* Not only did Dr. O'Hara demur in recommending reunification, he could not even recommend unsupervised visits with the child. *Id.*, at 26.

Dr. O'Hara testified that the relationship between Father and child "could be potentially beneficial" but it would not be "a necessary relationship for [the child.]" *Id.*, at 40. He recommended termination, noting the child's risk for exposure to extreme violence, homelessness and unstable and criminal activity if

6

she were placed with Father. *Id.*, at 45. It is clear that the child's developmental, emotional and physical needs – particularly the need for stability – are all best served by terminating Father's parental rights.

### D. Conclusion

Throughout the life of this case, which is to say throughout the life of the child, Father has refused to address any of the issues that caused the child to be without parental care. Father has refused to parent this child. This has caused child to be without the requisite care for the requisite length of time provided by the statute, thereby warranting a termination of Father's rights. With the grounds for termination established, it is clear to this Court that termination would best meet the child's needs and welfare. And so after a careful review of all the evidence set forth above, this Court concluded that CYF had carried the burden of proving by clear and convincing evidence that Father's rights should be terminated and that the child's best interests will be served thereby. For these reasons, the decision of the Court should be affirmed.

BY THE COURT:

_____, J.

7