J-S65043-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN RE: ADOPTION OF C.J., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: S.B. | |
| | No. 584 WDA 2016 |

Appeal from the Order April 26, 2016
in the Court of Common Pleas of Allegheny County
Orphans' Court at No.: CP-02-AP-0000126-2015

| | |
|---|---|
| IN THE INTEREST OF: M.B., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: S.S.B. | |
| | No. 598 WDA 2016 |

Appeal from the Order April 26, 2016
in the Court of Common Pleas of Allegheny County
Orphans' Court at No.: CP-02-AP-0000125-2015

BEFORE: LAZARUS, J., OLSON, J., and PLATT, J.[*]

MEMORANDUM BY PLATT, J.: **FILED OCTOBER 07, 2016**

In these consolidated appeals,[1] S.B. (Mother) appeals from the order

of the Court of Common Pleas of Allegheny County (trial court), entered April

_____

[*] Retired Senior Judge assigned to the Superior Court.

26, 2016 that terminated her parental rights to her daughters, C.J., born January of 2014, and M.B., born June of 2012 (Children). We affirm on the basis of the trial court's opinion.[2]

The Allegheny County Office of Children, Youth and Families (CYF) filed petitions to terminate Mother's parental rights to the Children on July 29, 2015. The trial court aptly summarized the events that led CYF to file those petitions in its opinion entered June 1, 2016. (**See** Trial Court Opinion, 6/01/16, at 1-3). We direct the reader to that opinion for the facts of this case.

The trial court held a hearing on CYF's petitions on March 9, 2016. Testifying at that hearing, in addition to Mother, were court-appointed psychological evaluator, Dr. Beth Bliss; and CYF caseworker, Kelley Nelson. C.J.'s father, C.G., did not appear at the hearing, despite notice. (**See** N.T. Hearing, 3/09/16, at 8-9).

The trial court entered its orders terminating Mother's parental rights pursuant to 23 Pa.C.S.A. §§ 2511(a)(2), (5), (8) and (b) on April 26, 2016. Mother filed her notice of appeal and statement of errors complained of on

_(Footnote Continued)_ ─────────────────────

[1] This Court consolidated these appeals, _sua sponte_, on May 3, 2016.

[2] The trial court also terminated the parental rights of C.J.'s father, C.G. C.G. did not appeal the termination of his rights. M.B.'s father, L.F., is deceased.

appeal in the case of C.J. on April 25, 2016,[3] and in the case of M.B., on April 28, 2016. *See* Pa.R.A.P. 1925(a)(2)(i). The trial court filed an opinion on June 1, 2016. *See* Pa.R.A.P. 1925(a)(2)(ii).

Mother raises the following question on appeal:

> I. Did the trial court abuse its discretion and/or err as a matter of law in concluding that [CYF] met its burden of proving that termination of [] Mother's parental rights best serves the needs and welfare of the [C]hildren pursuant to 23 Pa. C.S.[A.] § 2511(b) by clear and convincing evidence[?]

(Mother's Brief, at 7).[4]

_____

[3] Mother's notice of appeal appears to have been filed a day before the final order was entered. However, we will treat Mother's notice as having been properly filed after the order's entry. *See* Pa.R.A.P. 905(a)(5) ("A notice of appeal filed after the announcement of a determination but before the entry of an appealable order shall be treated as filed after such entry and on the day thereof.").

[4] Mother has waived any challenge to the termination of her parental rights pursuant to 23 Pa.C.S.A. §2511(a) by her failure to raise the issue in her concise statement and in the statement of questions involved portion of her brief. (*See* Rule 1925(b) Statement, Docket No. 125-2015; Rule 1925(b) Statement, Docket No. 126-2015; Mother's Brief, at 7); *Krebs v. United Refining Co. of Pennsylvania*, 893 A.2d 776, 797 (Pa. Super. 2006) ("We will not ordinarily consider any issue if it has not been set forth in or suggested by an appellate brief's statement of questions involved, and any issue not raised in a statement of matters complained of on appeal is deemed waived.") (citations omitted); Pa.R.A.P. 1925(b)(4)(vii) (stating, "Issues not included in the [Rule 1925(b) s]tatement and/or not raised in accordance with the provisions of this paragraph (b)(4) are waived."). In fact, the trial court observed that "Mother only appeals the [c]ourt's decision as to . . . 23 Pa.C.S.A. §[]2511(b)." (Trial Ct. Op., at 4; *see also id.* at 3 ("Mother does not contest that the [C]hildren have been out of her care for the statutorily requisite timeframe due to her repeated and continued neglect and failure to parent, nor does she argue that she has the ability to remedy the conditions that led to the [C]hildren's removal.")).

Our standard of review is as follows:

In an appeal from an order terminating parental rights, our scope of review is comprehensive: we consider all the evidence presented as well as the trial court's factual findings and legal conclusions. However, our standard of review is narrow: we will reverse the trial court's order only if we conclude that the trial court abused its discretion, made an error of law, or lacked competent evidence to support its findings. The trial judge's decision is entitled to the same deference as a jury verdict.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted).

We have examined the opinion entered by the trial court on June 1, 2016, in light of the record in this matter and are satisfied that that opinion is a complete and correct analysis of this case, particularly as it pertains to 23 Pa.C.S.A. § 2511(b).

Accordingly, we affirm the order of the Court of Common Pleas of Allegheny County that terminated Mother's parental rights pursuant to 23 Pa.C.S.A. §§ 2511(a)(8) and (b) on the basis of the concise, thoughtful, and well-written opinion of the Honorable Kathryn Hens-Greco. (**See** Trial Ct. Op., at 7 (finding "that CYF carried the burden of proving by clear and convincing evidence that [] Mother's parental rights should be terminated and that the [C]hildren's best interests will be served thereby.")); **see also** *id.* at 3-6.

Orders affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 10/7/2016

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA
ORPHANS' COURT DIVISION

IN THE INTEREST OF: C.J.; M.D.A.F. a/k/a : **CHILDREN'S FAST TRACK APPEAL**
M.B., minor children :

APPEAL OF: S.B., natural mother

Docket No.: CP-02-AP-0126;
CP-02-AP-0125

584 WDA 2016 & 598 WDA 2016

OPINION

HENS-GRECO, J. June 1, 2015

On March 9, 2016, following a one-day hearing on the above captioned matter in which S.B.

("Mother") appeared with counsel, this Court issued an order granting the petition of the Allegheny

County Office of Children, Youth and Families ("CYF") for involuntary termination of Mother's

parental rights, the natural parent to two-year-old C.J. (born 1/1/2014) and nearly four-year-old M.B.

(born 6/2/2012), pursuant to 23 Pa. C.S.A. §§ 2511(a)(2), (a)(5), (a)(8), and §2511(b). The Court also

terminated the rights of C.G., C.J.'s biological father; C.G. did not appear at the hearing despite proper

service and does not appeal. M.B.'s father, L.F., is deceased. For the reasons set forth below, the Order

of this Court terminating the Mother's rights to the children should be affirmed.

### A. Relevant Factual History

The family came to the attention of the Allegheny County Office of Children Youth and Families

("CYF") on September 18, 2013 after reports of domestic violence between Mother and C.G., the

biological father of C.J. and reports that Mother and the children were homeless. *See* Transcript of

1

Testimony ("T.T."), dated March 9, 2016, at 52. CYF put Mother up in a hotel, provided her clothing for the children, installed "crisis in-home services" and opened a case. Domestic violence between Mother and C.G. continued. In one instance, both parents were arrested and both had injuries. The police waited in the home for CYF to arrive. *Id.*, at 43. The agency discovered broken glass all over the home. *Id.* When the children were evaluated, CYF found that M.B. has special needs, her development delayed. *Id.* CYF later discovered that she had seizures. At the time of C.J.'s removal, she was underweight and had been diagnosed as "failure to thrive." *Id.*, at 43-44. Most of those associated concerns have been rectified, although the child still has a heart condition that is monitored every couple of months. *Id.*, at 79. The children have been out of Mother's care since July 18, 2014 when they were placed with Mother's cousin, their pre-adoptive foster mother E.G. The children were adjudicated dependent on August 11, 2014. Mother was incarcerated at the time and stipulated to the children's dependency.

CYF established a Family Service Plan ("FSP") with Mother to aid her in her reunification with her daughters. FSPs are comprised of goals, which are designed to address and resolve the conditions that led to children's removal from parental care. Mother's goals included: address domestic violence; address mental health issues including anger management; address parenting issues; obtain employment; maintain contact and cooperation with the agency; and visit with the children and eventually meet their basic needs. *Id.*, at 49-52. Mother largely refused to address any of these goals.

Mother provided descriptions of the domestic violence to CYF, but she continued to return to C.G. and, at least initially, refused to obtain a Protection From Abuse Order against him. *Id.*, at 49-50. Furthermore, she refused to engage in domestic violence treatment until September 2015, two months after the TPR petition was filed. There was evidence that Mother had contact with C.G. as late as January 2016. Mother has serious housing issues and an inability to provide for the children. At the TPR hearing, Mother testified that she has two jobs. *Id.*, at 87. But throughout the course of this case,

2

both when the child were with Mother and when they were without her care, Mother did not have sufficient funds to provide clothing, food or diapers unless they were provided to her by CYF. *Id.*, at 51. Troubling too is the fact that Mother refused to maintain consistent contact with CYF. After the children were removed in July 2014, contact was virtually lost until January-February 2015, and then lost until May 2015, which seemed to improve until September 2015 only to fall off again. Mother visited with her children only a few times for the rest of 2015. In the beginning, after the children's removal, she had made a couple visits and then had been arrested. When Mother was released in September 2014, there were still no visits until December 2014. There were no visits from January through May 2015. From May onward there were 66 scheduled visits; Mother missed 50 of them. However, because the children were placed with kin, the foster mother informally allowed Mother to visit the children. It is clear that the foster mother allowed these visits, but the Court finds that they did not occur with the regularity that Mother claims. Mother has had difficulty meeting her own basic needs. *Id.*, at 50. Her housing has never been permanent – living between the Women's Shelter and with C.G. Critically, she has never addressed her mental health issues. There is no proof that any of the necessary treatment occurred prior to January 2016. As of the date of the hearing, the children had been without parental care for 20 months, and it was clear that Mother is unable to remedy the conditions that led to their removal. On March 9, 2016, this Court granted CYF's petition and terminated Mother's parental rights.

## B. Standard

CYF based its petition to terminate Mother's parental rights on 23 Pa.C.S.A. §§ 2511 (a)(2), (a)(5), and (a)(8). Mother does not contest that the children have been out of her care for the statutorily requisite timeframe due to her repeated and continued neglect and refusal to parent, nor does she argue that she has the ability to remedy the conditions that led to the children's removal. These conditions remain, and those

issues are settled. Mother only appeals the Court's decision as to the second, necessary step to the Court's termination framework, as mandated by case law and 23 Pa.C.S.A. §2511(b).

Once the statutory grounds for involuntary termination of parental rights have been clearly shown, the Court must consider whether the termination would meet the needs and welfare of the child under subsection §2511(b):

> (b) Other considerations. – The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6), or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petitions.

23 Pa. C.S.A. § 2511 (b). A party seeking termination of parental rights must establish by clear and convincing evidence that the parent's conduct satisfies at least one of the statutory grounds for termination; if it is determined that this burden of proof has been met, then the trial court must next consider the second step of the process, which entails a determination of whether termination best serves the needs and welfare of the child. *In re S.D.T., Jr.*, 934 A.2d 703 (Pa. Super. 2007). In reviewing an order terminating parental rights, the appellate court "is limited to determining whether the decision of the trial court is supported by competent evidence. Absent an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's decision, the decree must stand." *In re S.H.*, 879 A.2d 802, 809 (Pa. Super. 2005). Furthermore, the trial court is "the sole determiner of the credibility of witnesses and resolves all conflicts in testimony." *Id.*

## C. Discussion

The only question in this case is whether CYF has proven that termination serves the children's best needs and welfare pursuant to §2511(b). The answer is unequivocally in the affirmative. Mother's mental health issues and her refusal to access available treatment are most troubling for this Court. Her mental health is directly attributable to her inability to parent, which in turn harmed the children. This

4

Court does not take lightly the fact that Mother has been abused by C.J.'s father. But the question before this Court was not one of fault, but one of ability to care for the children.

Psychologist Dr. Beth Bliss diagnosed Mother with anti-social personality disorder. *See* T.T., at 17. Dr. Bliss found that Mother's maladaptive personality and current functioning impedes her ability to provide a safe and nurturing environment for her children at this time. *Id.*, at 19. Critically, Dr. Bliss testified that personality disorders in general do not change. *Id.*, at 18. By maladaptive personality, Dr. Bliss elaborated to mean Mother's personality traits: her defensiveness and justification and lack of accountability. *Id.*, at 19. Dr. Bliss testified that Mother has shown a pattern of disregard for rules. *Id.*, at 17. For example, Mother has a history of illegal behavior, and minimized or denied responsibility or culpability. *Id.* Dr. Bliss testified that Mother had been irresponsible in meeting her parenting obligations and shows no accountability for her lack of parenting. *Id.* She justified a lot of her negative behavior, and she completely denied to Dr. Bliss that her relationship to C.G. was abusive, save one incident. *Id.*, at 18. She did not acknowledge or understand how this abusive relationship would be a problem for her children. *Id.* Those traits do not typically change. And those traits applied to Mother's history with the legal system and her history of an abusive relationship with C.G. means that Mother cannot change the detrimental environment in which her children would necessarily be exposed to if they were in her care.

The Court does not ignore the positive relationship she has with her children. Dr. Bliss testified that both children were engaged with Mother, who was attentive and knowledgeable about them and their interest. *Id.*, at 13. She was developmentally appropriate with the two- and nearly four-year-old. *Id.*, at 14-15. She appeared to have a relationship with them. *Id.*, at 14. There were no negative observations; although, Mother was not especially in tune with the children's health issues (e.g., M.B. attends a certain daycare given her special needs). *Id.*, at 15. M.B. recognized Mother as her mother, but C.J. did less so. *Id.*, at 27. In fact, Dr. Bliss testified that C.J. views her foster mother as her

5

psychological parent, given that her bonding with the foster mother has occurred over the majority of her life. *Id.*, at 22.

However, Dr. Bliss recommended, and this Court agreed, that termination would best meet the children's needs and welfare. *Id.*, at 21. Dr. Bliss testified that one cannot just consider whether there is a bond, that a bond does not always make a home environment safe and nurturing. *Id.*, at 29. Dr. Bliss testified that Mother's pervasive pattern of traits is "extremely problematic for the girls." *Id.*, at 21. While Dr. Bliss opined that Mother cannot change her personality traits, therapy could have allowed her to manage those traits and correct some of the behavior. *Id.* But now the children have been out of Mother's care for close to two years – since C.J. was six months old and since M.B. was two. Meanwhile, Mother has not shown that she has worked on any of her mental health issues. *Id.* At the time of the evaluation, Mother was still taking no responsibility for her actions and minimizing or denying any issues with the law or her abusive partner. *Id.*, at 21-22. Mother has shown that her issues have caused instability. Given the young age of the children, instability can detrimentally affect their development. *Id.*, at 22. Dr. Bliss testified that it is very important to get stability as quickly as possible. *Id.* Dr. Bliss opined that so much time has passed that any successful treatment would only occur in the long term. *Id.*, at 32.

While a future relationship with Mother could be beneficial to the children, it is not necessary. And if ties were completely severed, any adverse affect on the children – mainly the older M.B. – would be temporary and outweighed by the positive benefit they would receive from the termination. *Id.*, at 23. The forefront of these benefits includes stability such that the girls can continue to physically and mentally grow into healthy children. *Id.* But it cannot be understated the importance of a child's development free from domestic violence and, given Mother's history with domestic violence, the certainty that the children would be exposed to it if placed in her care.

## D. Conclusion

After a careful review of all the evidence and for the reasons set forth above, this Court concluded that CYF carried the burden of proving by clear and convincing evidence that the Mother's parental rights should be terminated and that the children's best interests will be served thereby. For these reasons, the decision of the Court should be affirmed.

BY THE COURT:

_____, J.