J-S41018-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| IN RE: ADOPTION OF: N.S.B. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| APPEAL OF: N.D., MOTHER | No. 398 MDA 2017 |

Appeal from the Decree January 23, 2017
In the Court of Common Pleas of Franklin County
Orphans' Court at No(s): 11 Adopt 2016

BEFORE:  GANTMAN, P.J., LAZARUS, J., and PLATT, J.[*]

MEMORANDUM BY LAZARUS, J.:                    **FILED JUNE 28, 2017**

N.D. (Mother) appeals from the trial court's decree granting J.B.'s

(Father) petition to terminate[1] Mother's parental rights to their eleven year

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] In a proceeding to terminate parental rights involuntarily:

> [T]he burden of proof is on the party seeking termination to establish by clear and convincing evidence the existence of grounds for doing so. The standard of clear and convincing evidence is defined as testimony that is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." It is well established that a court must examine the individual circumstances of each and every case and consider all explanations offered by the parent to determine if the evidence in light of the totality of the circumstances clearly warrants termination.

*In re adoption of S.M.*, 816 A.2d 1117, 1122 (Pa. Super. 2003) (citation omitted). *See also In re C.P.*, 901 A.2d 516, 520 (Pa. Super. 2006) (party seeking termination of parental rights bears burden of proving by clear and convincing evidence that at least one of eight grounds for termination under
*(Footnote Continued Next Page)*

old daughter, N.S.B. (Child), born in January 2006. After careful review, we vacate.[2]

Child resided with Mother in Frederick County, Maryland, from the time of her birth until 2007. Father was incarcerated two weeks before Child's birth. Mother and Father have never married.[3] By court order, Child was placed in the custody of Paternal Aunt, M.B, from 2007 until 2013. Mother was incarcerated from July 2013 to December 2013.

In October 2013, Father filed a petition to modify custody in Frederick County, Maryland; the court granted Father sole legal and physical custody of Child, with Paternal Aunt having "access" to Child. *See* Frederick County, Maryland Docket Entry, 10/12/13, at #39000. Child lives with Father and Stepmother, A.M., in Franklin County, Pennsylvania.

While in jail, Mother filed a counter complaint for custody in November 2013, seeking both partial custody and visitation. Mother's modification petition was dismissed. Mother filed an amended petition to modify custody in March 2014. The parties appeared for a custody hearing in Frederick County, Maryland, in May 2014; however, because the court found that

_(Footnote Continued)_ ————————————

23 Pa.C.S. § 2511(a) exists and that termination promotes emotional needs and welfare of child set forth in 23 Pa.C.S. § 2511(b)).

[2] Guardian ad litem, Janice M. Hawbaker, Esquire, has adopted the trial court's Pa.R.A.P. 1925(a) opinion on appeal.

[3] Mother and Father have another child together. That child is not a subject of this appeal.

Father had not been properly served, the court continued the hearing until July 2014. In August 2014, the Maryland trial court dismissed "any and all pending motions without prejudice, to include the amended petition to modify custody and the counter-claim for custody." *Id.* at #61000.

In February 2016, the Maryland trial court reopened the case. On February 10, 2016, Mother filed yet another custody and visitation petition in Maryland. The court dismissed this petition. Mother moved to Fayetteville, North Carolina in the spring of 2016. In May 2016, the Maryland trial court granted Father's petition to dismiss Mother's custody motion.

On March 15, 2016,[4] Father and Stepmother filed a petition to terminate Mother's parental rights to Child pursuant to 23 Pa.C.S. §§ 2511(a)(1)[5] and (b) of the Adoption Act.[6] The court held a hearing on

_____

[4] Although Father and Stepmother filed the termination petition prior to the conclusion of the parties' custody proceedings in Maryland, the court waited to hold a termination hearing until the Maryland court finally dismissed the custody matter.

[5] Pursuant to section 2511(a)(1):

(a) General rule. — The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or **has refused or failed to perform parental duties.**

23 Pa.C.S. § 2511(a)(1) (emphasis added).

Father's petition on November 4, 2016. On January 23 2017, the court entered a decree terminating Mother's parental rights to Child and granting Father and Stepmother custody of Child pursuant to 23 Pa.C.S. § 2521.[7]

Mother timely appeals, raising the following issue for our consideration: "Whether the trial court's decision to terminate Mother's parental rights was supported by clear and convincing evidence and did not constitute an abuse of discretion." Mother's Brief, at 4.

It is well established that a parent is required to exert "a sincere and genuine effort to maintain a parent-child relationship[.] [T]he parent must use all available resources to preserve the parental relationship and must exercise 'reasonable firmness' in resisting obstacles placed in the path of maintaining the parent-child relationship." *In re Shives*, 525 A.2d 801, 803 (Pa. Super. 1987).

_____

*(Footnote Continued)* —————————————

[6] *See* 23 Pa.C.S. §§ 2101-2910.

[7] Pursuant to section 2521(b):

> (b) Award of custody. — The decree shall award custody of the child to the agency or the person consenting to accept custody under section 2501 (relating to relinquishment to agency) or section 2502 (relating to relinquishment to adult intending to adopt child) or the petitioner in the case of a proceeding under section 2512 (relating to petition for involuntary termination).

23 Pa.C.S. § 2521(b)

However, the law acknowledges the potential that a custodial parent can deliberately create obstacles and erect barriers intended to impede free communication and regular association between a non-custodial parent and his or her child. *In re Adoption of Durham*, 467 A.2d 828 (Pa. Super. 1983). For this reason, the court *must* consider the individual circumstances and any explanations offered by the non-custodial parent to determine if the evidence, in light of the totality of the circumstances, clearly warrants the involuntary termination of parental rights. *In re Santelia*, 465 A.2d 21, 23 (Pa. Super. 1983)).

Here, we find that the record is silent with regard to the circumstances surrounding the denial of Mother's serial petitions to modify custody and visitation. In fact, we are unaware as to whether Mother had visitation rights to Child before her parental rights were terminated. While Mother's conduct unquestionably led to Child's removal from her house in 2007, both Father and Mother admit to having drug dependency issues and had been incarcerated prior to (Father) and after (Mother and Father) Child's birth.

Mother filed petitions to modify custody and seek visitation every year since she last had contact with Child in 2013. Mother was incarcerated during one of the hearings and was not permitted to participate in the civil proceeding. N.T. Termination Hearing, 11/4/16, at 80. At another court proceeding on her custody petition, the court apparently continued the hearing for lack of service on Father, despite the fact that he appeared in

- 5 -

court for the proceeding and on-the-record evidence that Mother attempted to serve Father several times at his known address. *Id.* at 48.

While Mother testified that her requests for shared custody and visitation have been denied each time, we have no idea why the Maryland trial court came to these determinations. Moreover, unlike a case where the child is in the custody of an agency that can intervene on behalf of a parent to facilitate communication with a child and help send gifts, cards and clothing, Mother must directly contact Father as custodial parent. Mother has many impediments that make it difficult to visit with Child, namely her inability to drive and lack of transportation. We are aware that a parent has an affirmative duty to "love, protect, and support his child and to make an effort to maintain communication and association with that child," **McCray**, *supra*, and Mother did not give a clear explanation as to why she had not researched how to travel to see Child using public transportation. However, it is clear from the parties' testimony that Mother and Father have an acrimonious relationship.

Although Father supports termination based on the fact that Mother has never financially supported Child, we have no evidence to prove that Father has ever filed for child support or that the court ordered Mother to pay support.

At the termination hearing, Mother testified that she was employed, living with a family member and is capable of providing for Child. N.T. Termination Hearing, 11/4/16, at 58. In her latest custody petition, filed

only one month before the petition to terminate, Mother sought partial custody, not full-time custody; she is willing to share custody with Father. *Id.*

Under a totality of the circumstances, we cannot conclude that Father and Stepmother have proven, *by clear and convincing evidence*, that Mother "has refused or failed to perform parental duties," and, thus that termination was proper under subsection 2511(a).

However, even if we did find that termination was proper under section 2511(a), the court must then engage in the second part of the analysis, guided by 2511(b), and assess the needs and welfare of the child to determine whether termination is in the best interest of the child. *In re C.M.S.,* 884 A.2d 1284, 1286 (Pa. Super. 2005). The determination of the best interests of the child is a separate consideration and is not dictated by a finding that the statutory elements under subsection 2511(a) for termination are present. *In re S.D.T., Jr.*, 934 A.2d 703 (Pa. Super. 2007). It is incumbent upon the trial court to engage in the second part of the analysis to discern "the nature and status of the parent-child bond, [by] paying close attention to the effect on the child of permanently severing the bond." *In re C.P.*, 901 A.2d at 520. While expert testimony and a formal bonding analysis are not specifically required by statute, the moving party must at least produce sufficient evidence to prove that severing the bond between child and parent will not have negative effects on the child. *Id.*

In terms of its bonding analysis under section 2511(b), the court opined that "the evidence *suggests* that there is no emotional bond between Mother and [Child] which, if broken, would be detrimental to the [Child's] best interests." Trial Court Opinion, at 9 (emphasis added). In fact, the court continues, "the evidence shows that [Child] views Step[]mother as her mother, [] does not ask to see her natural mother [and] Father testified that [Child] has a strong bond with Step[]mother." *Id.*

Here, while Mother had not communicated with Child since 2013, her efforts in filing serial petitions to modify custody and seek visitation must be viewed as an attempt to prevent the forfeiture of her rights to Child and as an expression of her love, concern and interest for Child's well-being. *In re Adoption of Pyott*, 380 A.2d 311 (Pa. 1977).

It is clear from the record that Mother and Father do not get along and we question what role Father might have played in having Mother's cards to Child "returned to sender" and, overall, how open he is to Mother having contact with Child. *See* N.T. Termination Hearing, 11/4/16, at 79 (testimony from Mother indicating that Father and his attorney would not permit Mother to see Child when she was in town for termination hearing). Mother resorted to giving Paternal Aunt gifts, clothing and cards to drop off to Child at Father's house. *In re Adoption of M.J.H.*, 501 A.2d 648 (Pa. Super. 1985) (emphasizing importance of role of surrogate for non-custodial parent to help maintain parental relationship; under circumstances of given case use of a surrogate would be most feasible and effective means to

accomplish that end). Unfortunately, Father testified that he no longer speaks with his sisters. N.T. Termination Hearing, 11/4/16, at 83. It appears that every avenue connecting Mother to Child was headed off by Father.

Moreover, while the security that Child may have with Stepmother, as a potential adoptive parent, is a factor to be considered under section 2511(b), *see In re N.A.M.*, 33 A.3d 95, 103 (Pa. Super. 2011), "one cannot discount the fact that a major aspect of a section 2511(b) analysis is the status *of the parent-child bond* and the effect that severance of that bond would have on the child." *In re Adoption of G.L.L.*, 124 A.3d 344, 347 (Pa. Super. 2015) (emphasis added). Unfortunately, there is no testimony of what, if any, bond exists between Mother and Child, other than Father's self-serving testimony that Child looks to Stepmother as her mother and that Child has bonded with Stepmother. N.T. Termination Proceeding, 11/4/16, at 15. Under such circumstances where the record is not clear on whether a parent-child bond exists, and where Child is old enough to testify regarding the bond, if any, she has with Mother and how she would be affected were that bond terminated, we must vacate the court's termination decree also on the basis of a lack of clear and convincing evidence under subsection 2511(b).

Decree vacated.  Jurisdiction relinquished.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>6/28/2017</u>