J-A11021-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: S.P., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: D.W., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1400 WDA 2022 |

Appeal from the Order Entered November 7, 2022
In the Court of Common Pleas of Allegheny County Orphans' Court at
No(s): CP-02-AP-0000115-2022

| | | |
|---|---|---|
| IN THE INTEREST OF: M.P., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: D.W., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1401 WDA 2022 |

Appeal from the Order Entered November 7, 2022
In the Court of Common Pleas of Allegheny County Orphans' Court at
No(s): CP-02-AP-0000051-2022

BEFORE:   BENDER, P.J.E., STABILE, J., and PELLEGRINI, J.[*]

MEMORANDUM BY BENDER, P.J.E.:                    **FILED:  June 12, 2023**

D.W. ("Father") appeals from the orders, entered November 7, 2022, that granted the petitions filed by the Allegheny County Office of Children, Youth and Families ("Agency") to involuntarily terminate Father's parental

---

[*] Retired Senior Judge assigned to the Superior Court.

rights to M.P., born in July of 2020, and S.P., born in August of 2021, (collectively "Children").[1]  Following review, we affirm.[2]

In his brief, Father lists the following two issues for our review:

I.      Whether the [t]rial [c]ourt erred and/or abused its discretion in finding the [Agency] met [its] burden of proof and proved by clear and convincing evidence that the parental rights of [Father] should be terminated pursuant to 23 Pa.C.S.[] § 2511 (a)(2), (a)(5), and (a)(8)?

II.     Whether the [t]rial [c]ourt erred and/or abused its discretion by finding that the [Agency] met [its] burden of proof and proved by clear and convincing evidence that terminating the parental rights of [Father] best meets the needs and welfare of the minor [C]hildren pursuant to 23 Pa.C.S.[] § 2511 (b)?

Father's brief at 7.[3]

We review an order or decree terminating parental rights in accordance with the following standard:

---

[1] J.P.'s (Mother) parental rights to Children were likewise terminated by the same orders, dated November 7, 2022.  Mother is not a party to these appeals.

[2] Because these matters involve related parties and issues, this Court consolidated these two appeals by order entered on January 6, 2023.  **See** Pa.R.A.P. 513.

[3] The trial court terminated Father's parental rights as to S.P. under Sections 2511 (a)(1), (2), (5), (8) and (b) of the Adoption Act, 23 Pa.C.S. §§ 2101-2938.  However, we note that in the initial trial court's order relating to M.P., the grounds listed for terminating Father's parental rights referenced only Sections 2511 (a)(2), (5), (8) and (b).  An amended order, filed on December 19, 2022, added Section 2511 (a)(1).  Therefore, the trial court terminated Father's parental rights pursuant to the same subsections of 2511 (a) relating to both Children.

When reviewing an appeal from a decree terminating parental rights, we are limited to determining whether the decision of the trial court is supported by competent evidence. Absent an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's decision, the decree must stand. Where a trial court has granted a petition to involuntarily terminate parental rights, this Court must accord the hearing judge's decision the same deference that we would give to a jury verdict. We must employ a broad, comprehensive review of the record in order to determine whether the trial court's decision is supported by competent evidence.

*In re R.N.J.*, 985 A.2d 273, 276 (Pa. Super. 2009) (quoting *In re S.H.*, 879 A.2d 802, 805 (Pa. Super. 2005)). The burden is upon the petitioner to prove by clear and convincing evidence that its asserted grounds for seeking the termination of parental rights are valid. *Id.* Moreover, we have explained that:

The standard of clear and convincing evidence is defined as testimony that is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue."

*Id.* (quoting *In re J.L.C. & J.R.C.*, 837 A.2d 1247, 1251 (Pa. Super. 2003)). The trial court is free to believe all, part, or none of the evidence presented and is likewise free to make all credibility determinations and resolve conflicts in the evidence. *In re M.G.*, 855 A.2d 68, 73-74 (Pa. Super. 2004). If competent evidence supports the trial court's findings, we will affirm even if the record could also support the opposite result. *In re Adoption of T.B.B.*, 835 A.2d 387, 394 (Pa. Super. 2003).

Initially, we recognize that in the brief filed by counsel for the Children, it was suggested that because Father's concise statement of matters

complained of on appeal and his statement of questions involved included no reference to subsection (a)(1), he has waived his challenge to that subsection. In **Krebs v. United Refining Co.**, 893A.2d 776 (Pa. Super. 2006), this Court stated that we will not "consider any issue if it has not been set forth in or suggested by an appellate brief's statement of questions involved, Pa.R.A.P. 2116(a), and any issue not raised in a statement of matters complained of on appeal is deemed waived." **Id.** at 799. Therefore, we are compelled to agree with Children's counsel's position and conclude that Father has waived consideration of subsection 2511(a)(1) of the Adoption Act. Thus, we rely on the trial court's consideration of subsection 2511(a)(1) and affirm the trial court's decision to terminate Father's parental rights on that basis.

Additionally, we have reviewed the certified record, the briefs of the parties, the applicable law, and the comprehensive opinion authored by the Honorable David L. Spurgeon of the Court of Common Pleas of Allegheny County, filed on January 5, 2023. We conclude that Judge Spurgeon's well-reasoned opinion properly disposes of all the issues raised by Father. Essentially, Father's arguments center on credibility determinations made by the court and he overlooks the fact that he failed to complete assessments and attend supervised visitation. Specifically, the court stated that it found "aggravated circumstances against Father due to his lack of substantial and continuous contact." Trial Court Opinion, 1/5/2023, at 8-9. The court further pointed out that Father failed to participate in drug screenings and did not consistently visit with the Children.

- 4 -

Our standard of review prohibits this Court from overturning the trial court's credibility determination so long as its findings are supported by the evidence of record. *See In re M.G.*, 855 A.2d at 73-74 (stating that the trial court is free to make all credibility determinations and resolve conflicts in the evidence). Our review reveals that the court's credibility determinations are supported by an overwhelming majority of the evidence. Therefore, in addition to affirming the trial court's orders on the basis of subsection 2511(a)(1) of the Adoption Act, we also affirm the orders appealed from on the basis of Judge Spurgeon's opinion and adopt it as our own.

Orders affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/12/2023

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY,
PENNSYLVANIA ORPHANS' COURT DIVISION

| IN THE INTEREST OF: | : | **CHILDREN'S FAST TRACK APPEAL** |
| S.P., & | : | |
| M.P., | : | CP-02-AP-0000051-2022 |
| MINOR CHILDREN, | : | CP-02-AP-0000115-2022 |
| | : | |
| | : | 1400 WDA 2022 |
| | : | 1401 WDA 2022 |
| APPEAL OF: | : | |
| | : | |
| D.W., | : | **OPINION OF THE COURT** |
| FATHER. | : | |

**By:**

The Honorable David L. Spurgeon
Allegheny County Court of Common Pleas
440 Ross Street, Suite 506
Pittsburgh, PA 15219

**Copies to:**

Counsel for CYF,
Kristen Hunsicker, Esquire
Allegheny County Office of CYF
445 Fort Pitt Blvd.
Fort Pitt Commons, Suite 101
Pittsburgh, PA 15219

Guardian *ad litem* for Child,
Erin Krotoszynski, Esquire
KidsVoice
437 Grant Street
Suite 700
Pittsburgh, PA 15219

Counsel for D.W. (Father),
Lacy Scales, Esquire
Scales Family Law Practice
BNY Mellon Center, Suite 2900
Pittsburgh, PA 15219

Counsel for J.P. (Mother),
Jeffrey K. Eisenberg
Koppers Bldg. Ste. 1100
436 Seventh Avenue
Pittsburgh, PA 15219

# IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA ORPHANS' COURT DIVISION

| | |
|---|---|
| IN THE INTEREST OF: | **CHILDREN'S FAST TRACK APPEAL** |
| S.P., & <br> M.P., <br>     MINOR CHILDREN, | CP-02-AP-0000051-2022 <br> CP-02-AP-0000115-2022 <br><br> 1400 WDA 2022 <br> 1401 WDA 2022 |
| APPEAL OF: | |
| D.W., <br>     FATHER. | **OPINION OF THE COURT** |

Spurgeon, J.                                                                                           1/5/2023

## OPINION

On November 7, 2022, this Court issued an order terminating the rights of J.P. ("Mother") and D.W. ("Father") to their son M.P. ("Child 1", individually), a male, born on July 2, 2020, and their daughter S.P. ("Child 2", individually), a female, born on August 24, 2021. The Court found that grounds existed to terminate Mother's and Father's parental rights pursuant to 23 Pa. C.S. §§2511 (a)(1), (a)(2), (a)(5), and (a)(8). The Court then concluded that terminating Mother's and Father's parental rights served Children's needs and welfare pursuant to 23 Pa. C.S.§2511(b). At the Termination of Parental Rights ("TPR") hearing, Mother and Father were

both represented by separate counsel.[1] Mother was present for the hearing. Having been legally served, the Court utilized the intercom to page Father to report to the courtroom and the Court allowed time for his arrival. The Court delayed the proceeding waiting for him to arrive until 10:34 AM.[2] Father did not appear at the hearing.[3] Father's counsel, Attorney Lacy M. Scales, Esquire was present for the TPR hearing.

On November 30, 2022, Father, through his counsel, filed a Notice of Appeal. First, Father asserts that the Court erred when it concluded that clear and convincing evidence existed to terminate his parental rights under 23 Pa. C.S. §§2511 (a)(1), (a)(2), (a)(5), and (a)(8). Second, Father asserts the Court erred when it ruled, pursuant to 23 Pa. C.S.§2511(b), that termination of Father's parental rights would best serve the needs and welfare of the Children.

## STANDARD

CYF based its petition to terminate Father's parental rights on 23 Pa. C.S.A. §§2511 (a)(1), (a)(2), (a)(5), and (a)(8). These subsections provide

---

[1]To date, Mother has not filed a Notice of Appeal.
[2]Transcript of Testimony ("T.T.") 1 at 1
[3]Id. at 15-16

for the involuntary termination of parental rights if the petitioner can establish any of the following grounds:

(a)(1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

(a)(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot be remedied by the parent. [...]

(a)(5) The child has been removed from the care of the parent by the Court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child. [...]

(a)(8) The child has been removed from the care of the parent by the Court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and the termination of the parental rights would best serve the needs and welfare of the child.

23 Pa.C.S.A. §§2511 (a) (1), (a)(2), (a)(5), (a)(8).

Once the statutory grounds for involuntary termination of parental rights have been demonstrated by clear and convincing evidence, the Court must consider whether the termination would meet the needs and welfare of the child under §2511 (b):

(b) Other considerations. – The Court, in terminating the rights of a parent, shall give primary consideration to the development, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6), or (8), the Court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petitions.

23 Pa.C.S.A. §2511(b).

A party seeking termination of parental rights must establish by clear and convincing evidence that the parent's conduct satisfies at least one of the statutory grounds for termination; if it is determined that this burden of proof has been met, then the trial court must next consider the second step of the process, which entails a determination of whether termination best serves the needs and welfare of the child. *In re S.D.T., Jr.*, 934 A.2d 703 (Pa. Super. 2007). When determining whether terminating parental rights serves the child's needs and welfare, the Court must examine the nature and status of any bond between the parent and the child and consider whether severing that bond would destroy a relationship that is "necessary and beneficial." *In re P.A.B.*, 570 A.2d 522, 525 (Pa. Super. 1990). In reviewing an order terminating parental rights, the appellate court "is limited to determining whether the decision of the trial court is supported by competent evidence. Absent an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's decision, the decree must stand." *In re S.H.*, 879 A.2d 802, 809 (Pa. Super. 2005) Furthermore, the trial court is "the sole determiner of the credibility of witnesses and resolves all conflicts in testimony." *Id.*

6

## RELEVANT FACTS

The parties entered into stipulations filed in this case on November 4, 2022. Child 1 was born July 2, 2020. Child 2 was born August 24, 2021. (Joint Stipulation 1, 2) Paternity has not been established for either child. T.T. 66 at 1-3. (Joint Stipulation 4). D.W. was named as the father of Children by Mother. (Joint Stipulation 5). On December 9, 2020, Father motioned the Court for a paternity test, which the Court granted. (Joint Stipulation 6). Father failed to appear for the paternity test. Id. At 7-20 (Joint Stipulation 7).

Child 1 came into the care of Allegheny County Office of Children, Youth and Families ("CYF") on August 5, 2020. Mother dropped Child 1, who was 1 month old at the time, on her grandmother's porch and ran. The police were called and CYF immediately sought an Emergency Custody Authorization ("ECA"). Id. at 21-25; T.T. 67 at 22-24. (Joint Stipulation 8). Father was not an available caregiver because he was allegedly in substance abuse treatment; however, no documentation of treatment at that relevant time was provided. T.T. 69 at 16-25. A shelter hearing was held on August 7, 2020. On August 16, 2020, Child 1 was placed in a TRAC home with foster parents Kenya Williams and Shawn Coltrane. T.T. 70 at 7-11. On September 2, 2020, Child 1 was adjudicated dependent.

(Joint Stipulation 11). At the time of Child 1's dependency adjudication, Father was ordered to contact CYF, complete assessments, and attend supervised visitation. (Joint Stipulation 13)

Father's family plan goals included: completion of a drug and alcohol assessment by Pennsylvania Organization for Women in Early Recovery ("POWER") and follow any treatment recommendations; submission to random urinalysis; and to attend Arsenal parenting program. T.T. 72 at 12-15; T.T. 74 at 18-25. (Joint Stipulation 15). Throughout the dependency case, Father did not regularly attend the scheduled family plan meetings. T.T. 73 at 16-25.

On August 25, 2021, prior to Child 2 being released from the hospital, CYF sought and obtained an ECA. Child 2 was placed in the same foster home as Child 1, where they remained. (Joint Stipulation 16). On December 1, 2021, Child 2 was adjudicated dependent. (Joint Stipulation 17). On that same date, the Court appointed foster parents, Kenya Williams and Shawn Coltrane as educational and medical decision makers for the Children. T.T. 88 at 3-7. (Joint Stipulation 18).

On April 13, 2022, CYF filed its petition to terminate the parental rights with respect to Child 1. (Joint Stipulation 19). On June 8, 2022, the Court granted CYF's motion for a finding of aggravated circumstances

9

against Father due to his lack of substantial and continuous contact. The Court relieved CYF of the obligation to provide reasonable efforts to reunify the Children with Father. (Joint Stipulation 20). Thereafter, on August 31, 2022, CYF filed its petition to terminate the parental rights with respect to Child 2. (Joint Stipulation 21). Visits for both parents have remained supervised throughout the life of the dependency action. (Joint Stipulation 23).

The Court conducted a TPR hearing on November 7, 2022. At the time of that proceeding, Child 1 was in CYF care for 27 (twenty-seven) months and Child 2 has been in care since her birth. Neither child was returned to Mother's and/or Father's care throughout the lifetime of the case.

## DISCUSSION

To terminate parental rights, a trial court must first find clear and convincing evidence that grounds for termination exist under one of the eleven subsections of 23 Pa. C.S.A. §2511(a). If grounds exist, the court must then consider, under 23 Pa. C.S.A. §2511(b), whether termination would best serve the Child's developmental, physical and emotional needs and welfare. *In re J.F.M.*, 71 A.3d 989 (Pa. Super. 2013).

9

In order to establish grounds to terminate under subsection (a)(1), (a)(2) and (a)(5), CYF must demonstrate that the conduct that led to the removal has continued to persist throughout the entire life of the case. The scope of review engaged in by the trial court spans from before removal up until the final hearing. In the instant matter, CYF has demonstrated by clear and convincing evidence that Father is unable to parent due to his neglect; and further, those conditions will not be remedied within a reasonable period of time due to Father's lack of effort. "A child's life cannot be held in abeyance while a parent attempts to attain the maturity necessary to assume parenting responsibilities. The Court cannot and will not subordinate indefinitely a child's need for permanence and stability to a parent's claim of progress and hope for the future." *In the Adoption of R.J.S.* 901 A.2d 502, 513 (Pa Super. 2006).

Goals in this case were established to foster reunification between Father and the Children. Father was ordered to complete a POWER assessment for drugs and alcohol. At the initial stages of the dependency proceeding, Father was not considered a placement option because it was averred that he was in a treatment program. T.T. 69 at 16-25. The Court heard testimony from Rachel Wagner, who is the program manager for the intake department at POWER. T.T. 35 at 1-2. Ms. Wagner testified she was

familiar with Father and received referrals for Father by CYF to determine the need of substance abuse treatment and the appropriate level of treatment. Id. at 10-16. Ms. Wagner testified that POWER received three referrals. T.T. 39 at 10-12. The first referral was received on December 1, 2020, and appointments were scheduled for January 22, 2021, and March 5, 2021; however, Father failed to show for both appointments and consequently, the referral was closed on March 31, 2021. Id. at 18-22. The next referral was on July 22, 2021. Father did not respond, and the referral was closed out on September 7, 2021. Id. at 22-24. The last referral was received on October 19, 2021. Father completed the phone screening, but was a no-show for the November 1, 2021, appointment. The referral was closed out on December 1, 2021. T.T. 40 at 3-7. Father never provided any documentation to CYF that he was engaged in or completed any treatment. T.T. 98 at 5-9. Father also refused to sign any releases to CYF. Id. at 17-18.

Based on the lack of participation in POWER, the failure to follow through with any drug and alcohol assessments, and without Father proffering any evidence to the contrary[4], the Court found that Father failed to meet the goal of drug and alcohol assessment/treatment.

---

[4] T.T. 42 at 17-18

The second family plan goal was for Father to undergo random urine screens. The Court heard the testimony of Tarraca Jackson, who is employed with Allegheny County Health Department, Drug and Alcohol Screening Lab. T.T. 46 at 7-12. Ms. Jackson testified to attendance records and result reports for Father's urine screens. Ms. Jackson's office compiled the reports and were entered as CYF Exhibit 3, without objection. T.T. 47 at 1-18.

Ms. Jackson testified that Father was called in for a total of 6 screens beginning on January 5, 2021. T.T. 52 at 11-14. Father appeared for the January 5th and 21st screens, which yielded negative results. Id. 15-19. Father failed to comply with the screens as he missed the subsequent four requests. Id. at 25. This testimony was corroborated by CYF Caseworker Deborah McAllister-Johnson, who stated that Father reported that he was not going to attend any more screens. T.T. 98 at 19-23.

Based on Father's lack of participation in the drug screens, the failure to appear when called, and without proffering any evidence to the contrary[5], the Court found that Father failed to meet the goal of random drug screens.

Ms. McAllister-Johnson credibly testified that Father did not maintain consistent contact with CYF for the 27 months the dependency case was

---

[5]T.T. 54 at 19-20

12

open. T.T. 96 at 12-14. Father was to have visits scheduled through Arsenal. Father attended only two visits during the first round of visits. Father was then permitted to have his own visits, but Father only attended one and never returned for any additional visits. Arsenal discharged Father until he completed other services to show that he was invested in the program. T.T. 96 at 17-24. The Court found that CYF had offered Father transportation assistance to the visits to assist him with meeting with this goal. For the first six months, Ms. McAllister-Johnson dropped off bus passes and bus tickets for the visits to both parents. T.T. 132 at 1-4. The agency also offered transportation to the screens as well, but Father refused. Id. at 8-14. Father did not consistently visit the Children. T.T. 97 at 3-5. During the life of the case, Father had two visits with Child 1 and only one visit with Child 2. Id. at 6-15.

CYF caseworker McAllister-Johnson testified that Father chose to relocate to Erie County, although his Children were placed in a foster home in Allegheny County. CYF subsequently filed a motion seeking aggravated circumstances based on a lack of substantial and continuous contact with the Children, which was granted by this Court. T.T. 99 at 1-11. CYF offered additional testimony that Father does not have stable housing and that his

13

visitation has remained supervised throughout the life of the case. Id. at 25; T.T. 100 at 1-3.

The evidence presented clearly established the persistent nature of the issues that have caused Father to be unable to provide essential care for the Children remain. Child 1 has been in care of CYF for twenty-seven (27) months and Child 2 has been in care for her entire life. This Court concluded that Father cannot or will not remedy the problems that have made him incapable of functioning as the Children's parent. Therefore, CYF has satisfied grounds to terminate under subsection (a)1), (a)(2) and (a)(5).

In order to establish grounds to terminate parental rights under 23 Pa.C.S.A. §§2511 (a)(8), CYF must show by clear and convincing evidence (1) that the child has been removed from the care of the parent for at least twelve (12) months; (2) that the conditions which had led to the removal or placement of the child still exist; and (3) that the termination of parental rights would best serve the needs and welfare of the child. *In re Adoption of R.J.S.*, 901 A.2d 502, 511 (Pa. Super. 2006).

At the time of adjudication, the Court defined the conditions that necessitated Child's placement as Father's need to engage in appropriate services to address those issues throughout the course of this case. The Court held regular permanency review hearings to track Father's

compliance and progress. Given the above findings, the Court justifiably concluded that the evidence established the elements required by 23 Pa. C.S. §2511 (a)(8). Therefore, the Court finds grounds to terminate Father's parental rights pursuant to 23 Pa. C.S. §§2511 (a) (1), (a)(2), (a)(5), and (a)(8).

The second prong of the analysis addresses the needs and welfare of the Children pursuant to 2511(b). In relevant part, 23 Pa.C.S. §2511(b) requires the Court to give "primary consideration to the developmental, physical and emotional needs and welfare of the child" when terminating the rights of a parent.

As discussed by the Superior Court [in] *In re N.A.M.*, the inquiry into whether terminating a parent's rights serves the best interest of the child's needs and welfare necessitates an inquiry into the nature and status of any bond between the parent and child and the effect of severing that bond if it exists:

> However, the extent of the bond-effect analysis necessarily depends on the circumstances of the particular case. *In re K.Z.S.*, 946 A.2d 753, 763 (Pa. Super. 2008)
> While a parent's emotional bond with his or her child is a major aspect of subsection 2511(b) best-interest analysis, it is nonetheless only one of many factors to be considered by the Court when determining what is in the best interest of the child. *In re K.K.R.-S.*, 958 A.2d 529, 533-536 (Pa. Super. 2008) The mere existence of an emotional bond does not preclude the termination of parental rights. See *In re T.D.*, 949 A.2d 910 (Pa. Super. 2008) (trial court's decision

15

to terminate parents' parental rights was affirmed where Court balanced strong emotional bond against parents' inability to serve needs of child). Rather, the orphans' Court must examine the status of the bond to determine whether its termination 'would destroy an existing, necessary and beneficial relationship.' *In re Adoption of T.B.B.*, 835 A.2d 387, 397 (Pa. Super. 2003)

*In re N.A.M.*, 33 A.3d 95, 103 (Pa. Super. 2011); see also *In Re K.Z.S.*, 946 A.2d 753 (Pa. Super. 2008) (discussing proper analysis of parent-child bond in terminating parental rights).

*In re E.M.*, 533 Pa. 115, 620 A.2d 481 (1993) and its progeny have shaped the traditional subsection (b) analysis and calls for interpretation of any child bond. With respect to this determination, as set forth above, this Court conducted a parent-child bond analysis. In so doing, the Court is not required to use expert testimony and may rely upon the evaluations of social workers and caseworkers as well. *In re Z.P.*, 994 A.2d 1108, 1121 (Pa. Super. 2010). The effect of the bond-effect analysis necessarily depends on the circumstances of the particular case. *In re K.Z.S.*, 946 A.2d 753, 763 (Pa. Super. 2008).

Father, who did not appear at the termination proceeding, presented no witnesses or evidence regarding a bond or relationship with the children.

The Court heard testimony from Dr. Gregory Lobb, Ph.D., a licensed psychologist who was qualified as an expert in the field of psychology and

child psychology. T.T. 5 at 20-25. The Court also admitted and relied on CYF Exhibit 1, a 27-page report authored by Dr. Lobb.

Dr. Lobb performed a virtual evaluation of Father on August 22, 2022. Id. at 17-18. Dr. Lobb performed an interactional interview with foster parents and the Children on August 29, 2022. Id. at 20-22. Father never had an interactional evaluation with the Children and Dr. Lobb. T.T. 7 at 1-3. Father missed three scheduled appointments for the interactional evaluations and did not present to the Court any explanation for his absences. Id. at 5-6.

The initial evaluation presented difficulties according to Dr. Lobb. Although Father was cooperative and participated, he was unable to appear in person and did not have the technological capabilities to conduct the evaluation virtually, so the evaluation occurred over the phone. T.T. 12 at 1-6. Father admitted to Dr. Lobb that he was not visiting with the children due to an issue he was facing with substance addiction. Id. at 17-23.

Psychological testing revealed Father to have an at-risk elevation relating to aberrant experiences, which was described to the court as someone who has problems with reality testing, hallucinations, and perceptual disturbances. T.T. 13 at 24-25; T.T. 14 at 1-3. Dr. Lobb's

17

diagnosis of Father revealed him to have unspecified depressive disorder, alcohol use disorder, and schizoaffective disorder. Id. at 25; T.T. 15 at 1-2.

Dr. Lobb stated that his biggest concern for Father is that "he's not had much interaction at all with either of the children, and so I don't think he -- my guess is he doesn't really know the children and they probably don't know him." T.T. 16 at 16-20.

Dr. Lobb conducted the Children's interactional evaluation with the foster parents. Dr. Lobb opined that the Children were responsive to them and that the Children had a secure attachment to the foster parents. Id. at 5-6;T.T. 18 at 8-9. The Children have been in the same placement for most or all of their lives. Id. at 10. According to Dr. Lobb, the Children view the foster parents as their "go-to" people. Id. The Children recognize them as the people who take care of their needs and that they are present for them. Id. at 11-15.

Dr. Lobb credibly opined that a very strong bond exists between the Children and their foster parents. Id. at 16-17. Dr. Lobb characterized this bond as the "primary bond" for the Children. The foster parents are the adults that the Children look to for their care. Id. at 22-25. The foster parents are what he described as the "psychological parents" of the Children. T.T. 19 at 5-12. Furthermore, Dr. Lobb opined that the bond the

18

Children share with the foster parents is necessary. T.T. 20 at 17-18. Relying upon Dr. Lobb's expert testimony, the Children's primary attachment was a significant factor in the Court's determination regarding the Children's developmental and emotional needs and welfare. *In re K.M.* 53 A.3d 781, 792 (Pa. Super. 2012).

Conversely, Father has had no meaningful interaction with the Children. Further, Father did not participate in an interactional evaluation which could have given some indication of a bond between himself and the Children. Father failed to appear for three scheduled evaluations. No evidence or testimony was presented by Father to contradict the bond expert opinion offered by Dr. Lobb. For these reasons, the Court accepted the opinions of Dr. Lobb. The Court finds that the primary bond resides between the foster parents and the Children and they look to their foster parents for love, security and comfort. *In K.S.Z.*, 946 A.2d 753 (Pa Super. 2008).

The Children deserve permanency. This Court should not "seek to preserve in a law a relationship which no longer exists in fact, with the result that (a) child is consigned indefinitely to the limbo of foster care ..." *In re William L.*, 383 A.2d 1228,1241(Pa. 1978). Child 1 has been in CYF care for over twenty-seven (27) months and Child 2 has never lived with

Father. The Court completed a bond analysis for each individual child. *In re T.F.*, 2004 Pa. Super. 112 (2004). There was no competent evidence presented that the Children have any bond with Father. In contrast, the Court finds that a strong and positive bond does exist with the foster parents, who provide a loving and safe environment that is fertile grounds for a well-adjusted life. Accordingly, this Court finds that that termination would not destroy a relationship that is necessary and beneficial. *In re Bowman*, 647 A.2d 217, 2118 (Pa. Super. 1994).

Therefore, the evidence established that termination will be able to provide Children with much needed stability and permanence at their ages and this Court concludes that the developmental, physical, and emotional needs and welfare of Child would be best served by terminating Father's parental rights under 2511(b).

## CONCLUSION

The evidence discussed above amply supports the Court's conclusion that Father has failed to remedy his parenting deficiencies that brought the children into care. [6] It is clear that there is not a significant relationship between Father and the Children. The foster home provides

---

[6] *In re P.A.B.*, 570 A.2d 522, 526 (Pa. Super. 1990)

permanency and the Children identify the foster parents as their "psychological parents". The Court balanced the interest of family reunification with the children's right to a stable, safe and healthy environment and determined that CYF has proven by clear and convincing evidence that the totality of the circumstances support Father's parental rights being terminated. Therefore, for these reasons, the Court's order should be affirmed.

BY THE COURT:

_____,J.

The Hon. David L. Spurgeon